UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF INDIANA

| | |
|---|---|
| UNITED STATES OF AMERICA | Case No. 1:14-cr-151-JMS-TAB-01 |
| v. | ORDER ON MOTION FOR SENTENCE REDUCTION UNDER 18 U.S.C. § 3582(c)(1)(A) |
| TIMOTHY KURZYNOWSKI | (COMPASSIONATE RELEASE) |

Upon motions of ☒ the defendant ☐ the Director of the Bureau of Prisons for a reduction in sentence under 18 U.S.C. § 3582(c)(1)(A), and after considering the applicable factors provided in 18 U.S.C. § 3553(a) and the applicable policy statements issued by the Sentencing Commission,

IT IS ORDERED that the motions are:

☒ DENIED.

☐ DENIED WITHOUT PREJUDICE.

☐ OTHER:

☒ FACTORS CONSIDERED: See attached opinion.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) ) ) |
| v. | )   No. 1:14-cr-00151-JMS-TAB ) |
| TIMOTHY KURZYNOWSKI, | )  -01 ) |
| Defendant. | ) |

**ORDER DENYING MOTION FOR COMPASSIONATE RELEASE**

Defendant Timothy Kurzynowski, an inmate at FCI Allenwood Low, has filed a motion and an amended motion for compassionate release pursuant to § 603 of the First Step Act of 2018, which is codified at 18 U.S.C. § 3582(c)(1)(A)(i). He argues that his preexisting medical conditions put him at a high risk of severe illness from COVID-19, justifying his early release. For the reasons explained in this Order, Mr. Kurzynowski's motions for compassionate release are **DENIED**.

**I.
BACKGROUND**

On January 5, 2015, Mr. Kurzynowski pleaded guilty to a sole count of distribution of sexually explicit images of minors in violation of 18 U.S.C. § 2252(a)(2). Dkt. 50. The Court sentenced Mr. Kurzynowski to 96 months of confinement at the Bureau of Prisons ("BOP"), followed by 8 years of supervised release. *Id.* at 2-3. Although the sentencing guidelines recommended a sentencing range of 155-181 months, Mr. Kurzynowski received a downward departure based on his assurances that he would complete a program of sex offender treatment. As of the issuance of this Order, Mr. Kurzynowski has not completed or enrolled in sex offender treatment.

According to the presentence investigation report, in June 2013 a special agent of the Department of Homeland Security was alerted to a public chatroom where users were conversing about their sexual interests in children. Dkt. 35, para. 6. The name of the chatroom was "0!!!!!!ChildRapeTortureandBrutality:Dalnet." *Id.* One user, later identified as Mr. Kurzynowski, indicated that he was "into boys 10-13." *Id.*

On November 18, 2013, law enforcement went to Mr. Kurzynowski's home for a "knock and talk." *Id.* at para. 7. Although he initially denied visiting the chatroom, he later admitted that he was the user who indicated he was "into boys 10-13." *Id.* He told law enforcement that he had a sexual interest in boys aged 10-13, particularly when they were wearing underwear and swimwear. *Id.* He also said he had recently become interested in conversations related to the cooking and eating of children. *Id.* He said he could readily find persons who would talk to him about this subject, and that he had been chatting online nearly daily for several years. *Id.*

Mr. Kurzynowski initially told law enforcement that he had never seen child pornography before and that his sexual interest in children had been confined to chat only. *Id.* at para. 8. After some time, however, he acknowledged having seen child pornography in the past but claimed that he had not saved it. *Id.*

An onsite search of Mr. Kurzynowski's computer and electronic equipment proved this statement to be false. *Id.* at para. 9. During the search of his computer, law enforcement noticed the existence of Ares, a peer-to-peer file sharing program. *Id.* An external hard drive that was hidden in Mr. Kurzynowski's car contained over 600 images of child pornography that were associated with the file sharing program. *Id.* His collection of child pornography included sadistic and masochistic images of young children. *Id.* at para. 19.

During a subsequent forensic examination of Mr. Kurzynowski's computer, law enforcement learned that he had used various computer programs to transfer child pornography to other individuals. These outgoing transfers included a video depicting a pre-pubescent male performing oral sex on an adult male, a video depicting a nude pre-pubescent male masturbating, a video depicting two pre-pubescent boys' genitals, and a picture depicting a male toddler who is covered in semen and whose pants are pulled down exposing his penis. *Id.* at para. 17. Law enforcement determined the defendant distributed 1,367 images (92 images and 17 videos) between May 5, 2013, and October 6, 2013. *Id.* at para. 18.

Mr. Kurzynowski does not have any known prior arrests or convictions. *Id.* at paras. 38, 39. During his confinement, he has completed a floor cleaner apprenticeship program. Dkt. 75-3. BOP places him at a minimum risk for recidivism. Dkt. 74-1.

## II.
## LEGAL STANDARD

Under 18 U.S.C. § 3582(c)(1)(A), the court may "reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable." However, the court may do so only "if it finds that extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . ." 18 U.S.C. § 3582(c)(1)(A)(i).

Congress directed the Sentencing Commission to "describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples." 28 U.S.C. § 994(t). In response to this directive, the Sentencing Commission promulgated a policy statement regarding compassionate release under § 3582(c),

4

contained in United States Sentencing Guidelines ("U.S.S.G.") § 1B1.13 and the accompanying Application Notes. While that particular policy statement has not yet been updated to reflect that defendants (and not just the Bureau of Prisons ("BOP")) may move for compassionate release,[1] courts have universally turned to U.S.S.G. § 1B1.13 to provide guidance on the "extraordinary and compelling reasons" that may warrant a sentence reduction. *E.g., United States v. Casey*, 2019 WL 1987311, at *1 (W.D. Va. 2019); *United States v. Gutierrez*, 2019 WL 1472320, at *2 (D.N.M. 2019); *United States v. Overcash*, 2019 WL 1472104, at *2-3 (W.D.N.C. 2019). There is no reason to believe, moreover, that the identity of the movant (either the defendant or the BOP) should have any impact on the factors the court should consider.

As provided in § 1B1.13, consistent with the statutory directive in § 3582(c)(1)(A), the compassionate release analysis requires several findings. First, the court must address whether "[e]xtraordinary and compelling reasons warrant the reduction" and whether the reduction is otherwise "consistent with this policy statement." U.S.S.G. § 1B1.13(1)(A), (3). Second, the court must determine whether the defendant is "a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." U.S.S.G. § 1B1.13(2). Finally, the court must consider the § 3553(a) factors, "to the extent they are applicable." U.S.S.G. § 1B1.13.

Section 3142(g) sets forth the factors a court must weigh in determining pretrial detention:

> **(g) Factors to be considered**.—The judicial officer shall, in determining whether there are conditions of release that will reasonably assure the appearance of the person as required and the safety of any other person and the community, take into account the available information concerning—
> **(1)** the nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of section 1591, a Federal

---

[1] Until December 21, 2018, only the BOP could bring a motion for sentence reduction under § 3582(c)(1)(A). The First Step Act of 2018, which became effective on December 21, 2018, amended § 3582(c)(1)(A) to allow defendants to bring such motions directly, after exhausting administrative remedies. See 132 Stat. at 5239 (First Step Act § 603(b)).

crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device;
**(2)** the weight of the evidence against the person;
**(3)** the history and characteristics of the person, including—
>**(A)** the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and
>**(B)** whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and

**(4)** the nature and seriousness of the danger to any person or the community that would be posed by the person's release.

18 U.S.C. § 3142(g).

Section 3553(a) sets forth the factors a court must consider in imposing a sentence:

**(a) Factors to be considered in imposing a sentence.**—The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection. The court, in determining the particular sentence to be imposed, shall consider—
>**(1)** the nature and circumstances of the offense and the history and characteristics of the defendant;
>**(2)** the need for the sentence imposed—
>>**(A)** to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>>**(B)** to afford adequate deterrence to criminal conduct;
>>**(C)** to protect the public from further crimes of the defendant; and
>>**(D)** to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
>
>**(3)** the kinds of sentences available;
>**(4)** the kinds of sentence[s] and the sentencing range established for--
>>**(A)** the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines [issued by the Sentencing Commission . . . ;]
>
>**(5)** any pertinent policy statement guidelines [issued by the Sentencing Commission . . . ;]
>**(6)** the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
>**(7)** the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

## III.
## DISCUSSION

Mr. Kurzynowski asks the Court to reduce his sentence because his preexisting medical conditions place him at an increased risk of severe illness or death from COVID-19. The Court does not reach these arguments, however, because Mr. Kurzynowski's early release would present a danger to the safety of the community and the § 3553(a) factors do not favor release.

The factors that the Court must consider under § 3142(g) weigh in favor of finding that Mr. Kurzynowski presents a danger to the community. First, although the victims of his crimes were not identified, he contributed to the ongoing victimization of an untold number young and exploited children. Many of the images in his collection depicted the sadistic and masochistic sexual abuse of children, and he shared videos and pictures of boys and toddlers being sexually abused by adult men. His desire to converse on chatrooms about cooking and eating children is profoundly troubling, and the violent nature of the images in his collection raises concerns that such conversations may well be more than idle chatter.

Second, the weight of the evidence against Mr. Kurzynowski is overwhelming. Law enforcement discovered hundreds of images of child pornography on his external hard drive, and a forensic examination of his laptop uncovered evidence that he had transferred approximately 1,367 images of child pornography to other individuals. Although Mr. Kurzynowski initially lied to law enforcement about viewing child pornography, collecting child pornography, sharing child pornography, and visiting the chatroom "0!!!!!!ChildRapeTortureandBrutality:Dalnet," he later confessed to engaging in this conduct and ultimately pleaded guilty.

Third, Mr. Kurzynowski has a long history of similar behavior. He told law enforcement that he visited chatrooms on a daily basis for years. He also reported being sexually attracted to young boys between the ages of 10 and 13. Despite assuring the Court that he would complete sex

offender treatment, he has not completed or enrolled in treatment to address these compulsive behaviors or his underlying sexual pathologies.

Fourth, Mr. Kurzynowski does not have any known prior arrests or convictions, but this fact is of slight significance in light of his long history of troubling sexual behaviors involving children.

The Court acknowledges that Mr. Kurzynowski's medical conditions place him at an increased risk of severe illness from COVID-19.[2] However, there is no evidence that he is too infirm to return to his previous criminal activities if released before completing his sentence.

Regarding the 18 U.S.C. § 3553(a) factors, the Court agrees with the Government that the need for Mr. Kurzynowski's sentence—to promote respect for the law, to reflect the seriousness of his crime, and to deter the ongoing victimization of children—also outweighs any justification for release based on the risk he faces from COVID-19. He has more than a year left on his sentence, which itself was a downward departure from the guidelines recommendation.

The Court acknowledges Mr. Kurzynowski's participation in BOP vocational programs. However, his crimes were not motivated by a lack of economic opportunity. They were motivated by his depraved sexual appetite toward young children, a pathology for which he has not received medical, psychological, or spiritual treatment. The need to protect members of our community—especially the most vulnerable members, children—demands that his request for early release be **DENIED**.

---

[2] Mr. Kurzynowski is a former smoker who suffers from hypertension and obesity. According to the Centers for Disease Control and Prevention, obesity and former smoker status each increases the risk of severe illness from COVID-19; hypertension might increase the risk of severe illness from COVID-19. https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html#smoking. Mr. Kurzynowski is currently housed at FCI Allenwood Low. According to BOP records, only four inmates housed at this facility have tested positive for COVID-19 throughout the course of the pandemic. *See*  https://www.bop.gov/coronavirus/.

## IV.
## CONCLUSION

For the reasons explained above, Mr. Kurzynowski's motions for compassionate release, dkts. [56] and [65], are **denied**.

**IT IS SO ORDERED**.

Date: 11/23/2020

Hon. Jane Magnus-Stinson, Chief Judge
United States District Court
Southern District of Indiana

Distribution:

All electronically registered counsel.